UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PERCY LEE JOHNSON                                    CIVIL ACTION

VERSUS                                              NO. 15-1586

DR. CASEY MCVEA, ET AL.                             SECTION "I" (2)

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff, Percy Lee Johnson, was a prisoner incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana. Johnson has since been transferred to Allen Correctional Center in Kinder, Louisiana. Record Doc. No. 30. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Dr. Casey McVea, Nurse Judith Tullos, Colonel Mike Todd and Sergeant Ronnie Spears. Johnson alleges that while incarcerated in RCC in December 2014, he was subjected to cruel and unusual punishment when he was wrongly placed on extreme suicide watch. Johnson also alleges that his placement on extreme suicide watch was retaliation by Spears for a sexual harassment grievance that Johnson had filed against Spears. Johnson further alleges that he received inadequate medical care for the injuries he suffered while placed on extreme suicide watch. Johnson seeks both damages and injunctive relief. Record Doc. No. 9, at p. 11.

On August 27, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Phyllis Glazer, counsel for defendants. Plaintiff

was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

During the conference, Johnson confirmed that his placement on extreme suicide watch in December 2014 was <u>both</u> cruel and unusual punishment <u>and</u> retaliation by Spears for a sexual harassment grievance that Johnson had filed against Spears. Johnson denied that he had said anything on the day at issue to indicate that he was homicidal or suicidal, and testified that he was not on any kind of mental health observation status at that time. Additionally, plaintiff alleged that he had to wait two to three months to receive medical care for the injuries he suffered from his placement on extreme suicide watch.

Johnson testified that he was incarcerated in RCC at the time of filing this complaint based upon a 2003 conviction for distribution of cocaine, for which he is serving a sentence of 20 years in prison. He stated that he had received and reviewed a copy of the medical records I previously ordered defendants to produce. Record Doc. Nos. 12 and 22. He said that the records are "somewhat" accurate, except that Nurse Judith Tullos, not Col. Mike Todd, was the "first responder" who spoke to him in connection with the subject incident.

Johnson testified that the medical records are accurate in reflecting that he has an extensive history of either threatening suicide or attempting suicide during his

incarceration in RCC.  He confirmed that he had attempted suicide while in jail "maybe two times."   Johnson testified that two of these incidents involved what the records indicate may have been attempts to hang himself, including once in May 2013 when he wrapped a sheet around his neck, although he said that his feet remained on the ground, and a second time in September 2013.  He also acknowledged that, after the incident that is the subject of this lawsuit, he slit his wrists in June 2015.  He stated that he had no such problems with suicidal tendencies before he was jailed.

As to the December 6, 2014 incident, Johnson testified that he was in his cell while inmates were being given haircuts, when Sgt. Ronnie Spears instructed him to pack his things because he was being moved to another tier.  Johnson denied that he said anything at all to Spears that might have indicated that he had threatened suicide or was homicidal on that date.  He said he had previously written a grievance against Spears "for some stuff they were doing on the tier."  Johnson stated that he packed his belongings and set them by the cell bars in response to the sergeant's order.  Plaintiff said that Spears returned a few minutes later and asked if he was ready to move.  Johnson testified that, after he said "yeah," Spears left the tier, returned with restraints, restrained plaintiff and directed another officer to open the shower.  According to plaintiff, Spears said he was placing Johnson in the shower on suicide watch because Johnson had told Spears he was feeling homicidal-suicidal that day.

Johnson testified that Nurse Tullos was summoned while he was under "medical observation" in the shower.  He said he advised the nurse that he had not told Spears that he was homicidal-suicidal that day.  Plaintiff testified that Nurse Tullos said she would have to call the doctor – Casey McVea – for instructions.  Johnson stated that Nurse Tullos left the area, then returned to say that the doctor had directed her to place Johnson on standard suicide watch.  Johnson stated that Col. Todd, who was making rounds on the tier at the time, stopped and asked Johnson what was happening.  Plaintiff testified that he explained the situation to Col. Todd, who said he would talk it over with both Nurse Tullos and Sgt. Spears.  Johnson again denied that he had said anything that day to indicate that he was homicidal or suicidal and asserted that he was not on any kind of mental health observation status at the time.  Johnson alleged that cameras on Sleet Unit 3, Right, Cell No. 1, should have captured the exchange that day on videotape.

Johnson stated that Spears fabricated plaintiff's alleged statement that he was homicidal-suicidal to retaliate against Johnson for having previously filed a "sexual harassment" grievance against Spears.  Plaintiff alleged that Spears and his work partner "were showing their private parts" to Johnson and other inmates on the tier, so Johnson filed an "A.R.P." (administrative remedies procedure) grievance against Spears.

Johnson testified that he was moved from observation in the shower to Col. Todd's office.  He stated that Todd told him that, after conferring with Spears and Tullos, Todd decided to place plaintiff on "extreme suicide watch" because Johnson had told Spears

that he was suicidal-homicidal, which Johnson again denied.  Plaintiff explained that he had not harmed himself despite plenty of opportunities to do so.

Johnson testified that he was then placed in four-point restraints strapped down to the bed in his cell, lying on his back, with restraints on both wrists and both ankles for about two days from December 6 through 8, 2014.  He said a social worker, who happened to be Col. Todd's wife, then "downgraded" him to standard suicide watch for one day, before he was "downgraded" again to mental health observation.

Johnson described the conditions of his placement on extreme suicide watch as being strapped down in four-point restraints on a small mattress on his bed.  He said he was released from the restraints for meals, but only for about seven minutes for each of the three daily meals.  He confirmed that he was restrained in this way in his own cell, Sleet Unit 3, Right, Cell No. 1.  He speculated that a videotape of his cell area should show the exchange between himself and Spears resulting in his restraint.  After the hearing, in response to my order, defense counsel reported that she had investigated and that there are no video or audio recordings of the incident between Spears and Johnson. Record Doc. Nos. 21 and 23.

Asked what injuries he had suffered as a result of being placed in the four-point restraints, Johnson said he experienced bruising, soreness and pain, including to his back, arms, wrists, armpits and chest, from being stretched out and forced to stay down in restraints.  He said he had to wait two or three months before being seen by a doctor,

although he was provided with some medication for his pain. He confirmed the indication in the medical records that he was seen by a doctor on January 22, 2015, and was given Motrin and Parafon Forte for these injuries. He also confirmed the notation in his medical records that he was later placed on standard suicide watch in April 2015, because "I had a lot going on in my family . . . and I told  . . . the social worker . . . I might have to go on there." He confirmed that he had requested to go on suicide watch on that occasion and that his claim in this case is limited to the earlier December 2014 incident.

Johnson repeated that his placement on extreme suicide watch in December 2014 was both cruel and unusual punishment and retaliation by Spears for the sexual harassment grievance that he had filed against Spears. Plaintiff claimed that, although the other defendants had said that Dr. McVea instructed them to place Johnson on extreme suicide watch, he knew that McVea was on vacation at that time.

After the hearing, Johnson submitted to the court a copy of the "A.R.P." grievance he had filed against Spears. However, that grievance was dated January 22, 2015, about six (6) weeks after the subject incident. Record Doc. No. 24, at p. 1. In a handwritten note as part of that submission, Johnson admitted:

> I'm sorry. But the incident on 12-6-14 took place befor[e] I put my A.R.P. out. I throught [sic] I put it out befor[e] incident. But looks like I didn't sir. I apologize, but here going [sic] a copy of the A.R.P. that I sent in.

Id. at p. 2 (emphasis added).

## ANALYSIS

I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005.  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute

a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights under the broadest reading.[1]

## II.   SUICIDE WATCH

Johnson contends that his placement on extreme suicide watch in December 2014 was cruel and unusual punishment.  Record Doc. No. 9, at p. 8.  The Eighth Amendment prohibits the cruel and unusual punishment of convicted prisoners.  Morris v. Livingston, 739 F.3d 740, 746 (5th Cir. 2014) (citing Wilson v. Seiter, 501 U.S. 294, 296-97 (1991)); Haralson v. Campuzano, 356 F. App'x 692, 696 (5th Cir. 2009) (citing Wilson, 501 U.S. at 296-97).  As the United States Supreme Court noted in Wilson, an Eighth Amendment claim has an objective as well as a subjective component.  Accordingly, this court "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson, 501 U.S. at 298, 303); accord Morris, 739 F.3d at 747.

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

With respect to the objective component, the Supreme Court noted in <u>Wilson</u> that because routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Wilson</u>, 501 U.S. at 298 (<u>quoting</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). The alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "so serious as to deprive [plaintiff] of the minimal measure of life's necessities." <u>Alexander v. Tippah Cnty.</u>, 351 F.3d 626, 630 (5th Cir. 2003) (quotation omitted); <u>accord</u> <u>Morris</u>, 739 F.3d at 747.

With respect to the subjective component of the test, the Supreme Court has concluded that it is appropriate to apply a deliberate indifference standard. <u>Wilson</u>, 501 U.S. at 303. In defining "deliberate indifference," the Supreme Court has held that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer</u>, 511 U.S. at 847.

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511 U.S. at 842 & n.8). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

The Supreme Court has reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Connick v. Thompson, 563 U.S. 51, 61 (2011); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997). The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]." Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact. Id. at 837; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

In this case, plaintiff has failed to allege facts sufficient to establish either component of the test. As to the objective component, Johnson's complaints about being

placed on extreme suicide watch do not rise to the level of an extreme deprivation that is so grave as to amount to a denial of the minimal civilized measure of life's necessities, sufficient to constitute a constitutional violation, as outlined above.  Johnson's medical records indicate that from March 2013 to December 2014, the time of the incident at issue, he regularly reported suicidal ideation and was regularly placed under mental health observation.  Moreover, the medical records establish that he was placed on standard suicide watch on ten occasions and on extreme suicide watch on four occasions before the incident at issue.  Johnson admittedly attempted suicide by hanging twice during that time frame, in May and September 2013.

As Johnson himself alleged in his complaint, extreme suicide watch is a routine procedure which is "employed for the management of offenders who actively engage in self-destructive behaviors."  Record Doc. No. 9, at p. 9.  The purpose of extreme suicide watch is to restrain a prisoner from engaging in self-destructive behaviors, in an effort to <u>minimize</u> the substantial risk of serious harm to the prisoner.  Johnson's medical records and testimony establish that he was a person who engaged in such behavior.  Although he experienced discomfort as a result of this procedure, his discomfort was not objectively harmful enough to establish a constitutional violation.

Even assuming that Johnson's testimony was sufficient to establish the objective component, Johnson has alleged no facts which show that the defendants acted with "deliberate indifference," either in creating these conditions or failing to respond to them.

-13-

Plaintiff has not alleged a "serious risk of harm" and has not alleged facts sufficient to show that defendants actually drew an inference that an excessive risk of serious harm to plaintiff existed.  The facts show that Johnson's placement on extreme suicide watch was not deliberately used as punishment, or with indifference to the prisoner's humanity. To the contrary, his placement on extreme suicide watch was intended to minimize his ability to engage in previously demonstrated self-destructive behaviors.

"There is no constitutional right to avoid being placed on suicide watch." Jones v. Blackburn, No. 3:14-cv-01229, 2014 WL 2480601, at *6 (M.D. Tenn. June 2, 2014) (citing Jones v. Lee, No. 2:09-CV-11283, 2012 WL 683362, at *4 (E.D. Mich. 2012), report & recommendation adopted, 2012 WL 1048541 (E.D. Mich. Mar. 28, 2012)). "Temporary placement on suicide watch, even when not necessary, does not implicate a liberty interest protected by the Due Process Clause nor does it amount to cruel and unusual punishment under the Eighth Amendment." Jones v. Lee, 2012 WL 683362, at *4 (citing Sheldon v. Smith Cnty. Jail Med. Clinic, No. 6:08cv68, 2010 WL 1658217, at *4 (E.D. Tex. Apr. 22, 2010), aff'd, 439 F. App'x 343 (5th Cir. 2011); Marshall v. Burden, No. 5:09CV00128, 2010 WL 670079, at *4-5 (E.D. Ark. Feb. 22, 2010); Starks v. Couch, No. 08-cv-407, 2009 WL 331357, at *2 (S.D. Ill. Feb. 11, 2009); Reynolds v. Mattson, No. 2:07-CV-59, 2008 WL 2704750, at *1 (W.D. Mich. July 9, 2008); Cherer v. Frazier, No. 2:06-cv-00502, 2007 WL 2406844, at *5-6 (D. Nev. Aug. 16, 2007)).  As in Sheldon, the "jailers clearly were not being deliberately indifferent to [plaintiff's]

safety, but on the contrary were taking precautions to ensure [his] safety.  The fact that these precautions were unnecessary in this case [as plaintiff alleged in his <u>Spears</u> hearing testimony] does not render them unreasonable or unconstitutional."  <u>Sheldon</u>, 2010 WL 1658217, at *4.  In short, <u>no</u> conduct or condition so extreme as to constitute an Eighth Amendment violation has been alleged.

III.   <u>RETALIATION</u>

As to his claims of retaliation, Johnson asserted that he was subjected to retaliation in response to the grievance he filed against Spears.  Record Doc. No. 9, at p. 8.  It is correct that prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about alleged misconduct.  <u>Morris v. Powell</u>, 449 F.3d 682, 684 (5th Cir. 2006); <u>Woods v. Smith</u>, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, the law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, <u>the defendants' intent to retaliate against the plaintiff for his or her exercise of that right</u>, a retaliatory adverse act, and causation, i.e., <u>but for the retaliatory motive the complained of incident . . . would not have occurred</u>.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

<u>Clarke v. Stalder</u>, 121 F.3d 222, 231 (5th Cir. 1997) (emphasis added), <u>vacated in part and reinstated in relevant part</u>, 154 F.3d 186 (5th Cir. 1998) (citing <u>Bounds v. Smith</u>, 430

U.S. 817 (1977); <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997); <u>Woods</u>, 60 F.3d at 1164-66) (quotations and additional citations omitted).

In <u>Woods</u>, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment.  Defendants in that case had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and to the warden of the prison.  The Fifth Circuit agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution:  "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  <u>Woods</u>, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims."  <u>Id.</u>

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that <u>but for</u> the retaliatory motive the complained of incident . . . would not have occurred.  This places a significant burden on the inmate . . . .  The inmate must produce <u>direct evidence of motivation</u> or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

<u>Id.</u> (citations omitted) (emphasis added).

-16-

A year later, the United States Supreme Court reexamined the scope of prisoners'

First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).

The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to

state a claim for denial of his right of access to the courts.  <u>Id.</u> at 349-50.

In the Fifth Circuit, the law "is well established that prison officials may not

retaliate against an inmate who exercises his right of access to court.  Officials likewise

may not retaliate against an inmate for using the grievance system.  <u>A plaintiff must</u>

<u>allege facts showing that the defendant possessed a retaliatory motive."</u>  <u>Decker v.</u>

<u>McDonald</u>, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010) (citing

<u>Morris</u>, 449 F.3d at 687; <u>Jones v. Greninger</u>, 188 F.3d 322, 324-25 (5th Cir. 1999);

<u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997); <u>Moody v. Baker</u>, 857 F.2d 256,

258 (5th Cir. 1988); <u>Whittington v. Lynaugh</u>, 842 F.2d 818, 820 (5th Cir. 1988); <u>Hilliard</u>

<u>v. Bd. of Pardons & Paroles</u>, 759 F.2d 1190, 1193 (5th Cir. 1985); <u>Ruiz v. Estelle</u>, 679

F.2d 1115, 1153 (5th Cir.), <u>amended in part and vacated in part</u>, 688 F.2d 266 (5th Cir.

1982); <u>Campbell v. Beto</u>, 460 F.2d 765, 768 (5th Cir. 1972)), <u>report & recommendation</u>

<u>adopted</u>, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (emphasis added).

Johnson has not established that a violation of his federal constitutional rights has

occurred under the circumstances described in his complaint.  He has admitted that he

filed his grievance against Spears <u>after</u> the incident which he claims was a retaliatory act,

<u>not</u> before.  Record Doc. No. 24.  Under these circumstances, neither Spears nor any

other defendant could conceivably have been retaliating against Johnson for an action that had not yet occurred and about which no defendant could have been aware. The allegedly retaliating official must have known of the inmate's prior, constitutionally protected activity as a prerequisite to showing both the official's retaliatory intent and but-for causation. <u>Booth v. King</u>, 228 F. App'x 167, 172 (3d Cir. 2007); <u>Muniz v. Childers</u>, 85 F.3d 623, 1996 WL 255193, at *1 (5th Cir. 1996); <u>Pratt v. Rowland</u>, 65 F.3d 802, 808 (9th Cir. 1995); <u>Griffin-El v. Beard</u>, No. 06-2719, 2013 WL 228098, at *5 (E.D. Pa. Jan. 22, 2013) (citing <u>Booth</u>, 228 F. App'x at 172; <u>Laskaris v. Thornburgh</u>, 733 F.2d 260, 265 (3d Cir. 1984); <u>Jacobs v. Pa. DOC</u>, No. 04-1366, 2009 WL 3055324, at *9 (W.D. Pa. Sept. 21, 2009)); <u>see also</u> <u>Manning v. Chevron Chem. Co., LLC</u>, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers [in a Title VII retaliation case] were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity.").

Thus, Johnson's allegations do not give rise to any plausible inference of retaliatory motive on the part of the defendants and do not "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation omitted); <u>see</u> <u>Wolters v. Fed. Bureau of Prisons</u>, 352 F. App'x 926, 928 (5th Cir. 2009) (citing <u>Jones</u>, 188 F.3d at 325; <u>McDonald v. Steward</u>, 132 F.3d 225, 231 (5th Cir. 1998)) (Inmate's claim that prison officials retaliated against him when they denied his requests

to be reassigned to a different unit of the prison and deliberately housed him with gang-affiliated inmates "fails because Wolters has not presented any evidence that any prison official acted with a retaliatory motive and has not alleged a chronology of events from which a retaliatory motive might plausibly be inferred."); Bishop v. Does, 350 F. App'x 941, 944 (5th Cir. 2009) (citing Jones, 188 F.3d at 325) (Inmate's claim that prison official transferred him out of a unit in retaliation for his previous litigation against staff in that unit failed because plaintiff made only conclusory allegations and had no evidence of retaliatory intent.); Leggett v. Comer, 280 F. App'x 333, 336 (5th Cir. 2008) (Retaliation claim was frivolous when inmate failed to show that "his property would not have been missing but for his letter-writing about [prison] officials, and [that] retaliatory intent motivated the lack of adequate inventories and storage of his property.").

Johnson's retaliation claim alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts. He has not shown the existence of retaliatory motive, causation or actual prejudice to his position as a litigant. Accordingly, his retaliation claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983. It must be dismissed pursuant to 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1).

IV.   MEDICAL CARE

Johnson testified that he was a convicted prisoner at all times during which defendants allegedly failed to provide him with adequate medical care for the injuries he

suffered from the four point restraints.  In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the United States Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).  As previously stated with respect to plaintiff's claim that being placed on extreme suicide watch amounted to cruel and unusual punishment, "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

Again, plaintiff must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.
"Mere negligence or a failure to act reasonably is not enough.  The officer must have the
subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir.
2003).  If the court finds that one of the components of the test is not met, it need not
address the other component. Davis, 157 F.3d at 1005.

The Supreme Court recently reaffirmed that "deliberate indifference" is a stringent
standard of fault, requiring proof that a municipal actor disregarded a known or obvious
consequence of his action. Connick, 563 U.S. at 61; Bd. of Cnty. Comm'rs, 520 U.S. at
410.  The deliberate indifference standard permits courts to separate omissions that
"amount to an intentional choice" from those that are merely "unintentionally negligent
oversight[s]." Southard, 114 F.3d at 551 (additional citations omitted) (emphasis added).
"'Subjective recklessness,' as used in the criminal law, is the appropriate test for
deliberate indifference." Norton, 122 F.3d at 291.

Initially, it cannot be concluded that Johnson's injuries constituted a serious
medical need for constitutional purposes.  Johnson has alleged facts, confirmed by his
testimony and the verified medical records, which establish that he experienced only
bruising, soreness and pain as a result of being restrained.  He was seen by a doctor for
his injuries on January 22, 2015, and was provided medication for his pain.  Certainly,
plaintiff did not suffer "a life-long handicap or permanent loss" of the type many courts
require to constitute a serious medical need for constitutional purposes. See Hill v.

-21-

Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth Cnty. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Lockett v. Suardini, 526 F.3d 866, 877 (6th Cir. 2008) (minor lacerations, cuts and soreness, which were no longer obvious upon medical examination within 24 hours after altercation, were not serious medical needs); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed); Vaughn v. City of Lebanon, 18 F. App'x 252, 274-75 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions were visible but not permanent); Roseberry v. Prisoner Transp. Servs., No. 4:15-CV-P126-JHM, 2016 WL 324549, at *4 (W.D. Ky. Jan. 26, 2016) (swelling and bruising "simply do not rise to the level of an objectively serious medical need"); Goodwin v. Kennedy, No. CV 13-1774, 2015 WL 1040663, at *12 (E.D.N.Y. Mar. 10, 2015) ("cuts, lacerations, bruises, and other superficial injuries . . . are not sufficiently serious to support a deliberate indifference claim") (quotations and citations omitted); Lewis v. Cavanaugh, No. 3:10-CV-00112-VLB, 2015 WL 540593, at *8 (D. Conn. Feb. 10, 2015)

(bruising and abrasions not serious medical needs); Hill v. Lappin, No. 3:CV-11-1609, 2012 WL 4069802, at *9 (M.D. Pa. Sept. 17, 2012) (cuts and bruises "as a result of being transported to another cell and the ensuing application of ambulatory and four point restraints were not" serious medical needs); Benitez v. Locastro, No. 9:04-CV-423, 2010 WL 419999, at *7 (N.D.N.Y. Jan. 29, 2010) (bruises and laceration not serious medical conditions).

Even assuming – though certainly not concluding – that plaintiff's injuries presented a serious medical need, Johnson's testimony and the verified medical records establish that jail personnel were not deliberately indifferent to his medical condition in the constitutional sense. Johnson has alleged facts, confirmed by his testimony and his medical records, that negate any inference of deliberate indifference by jail officials. Johnson was put on extreme suicide watch, a routine procedure that is "employed for the management of offenders who actively engage in self-destructive behaviors." Record Doc. No. 9, at p. 9. Johnson testified that he received medication for his pain after he was released from suicide watch. His medical records indicate that he was seen by a doctor on January 22, 2015.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent in any way to plaintiff's condition. While it is clear from his allegations and testimony that Johnson is not satisfied with the speed or nature of his

medical care, and that he experienced some delay in his initial treatment, no finding of

deliberate indifference can be made based on this record.

> [T]he decision whether to provide additional treatment is a classic example of a matter for <u>medical judgment</u>. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, <u>intentionally</u> treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis

added).  No such showing has been made on the current record.  In Johnson's case, the

decisions made by the treating medical providers to render the care that they gave, rather

than more specialized care, are classic examples of the exercise of "medical judgment,"

which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference

in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation.

<u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191,

195 (5th Cir. 1993); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless

of the length of delay, plaintiff at a minimum must show deliberate indifference to

serious medical needs.  <u>Wilson</u>, 501 U.S. at 298.  No such showing can be made in this

case in light of the medical attention Johnson received for his injuries during his

incarceration.

Contentions like Johnson's that amount to a mere disagreement with the quality

or extent of medical treatment or even negligence do not give rise to a Section 1983

claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.  His medical care claims must therefore be dismissed.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a

claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), as well as under Rule 12(b)(6), in light of his testimony explaining the factual basis of his claims.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____7th____ day of March, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.